IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| PRESTON ERIC WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0292 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff PRESTON ERIC WILSON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED.

I.
THE RECORD

Plaintiff initially applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act on February 5,

1996 alleging disability since January 31, 1996 (Transcript [hereinafter Tr.] 4; 120-123[1]). The Social Security Administration denied benefits initially and upon reconsideration and plaintiff timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 4; 101-103; 105-109; 116). An administrative hearing was held August 19, 1998 before ALJ Walter Orr. (Tr. 31-96). On April 15, 1999, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 14-27). The ALJ determined plaintiff retained the ability to perform his past relevant work as a stocker and loader. (Tr. 24, Finding #7).

Upon the Appeals Council's denial of plaintiff's request for review on August 7, 2002, ALJ Orr's determination became the final decision of the Commissioner. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUES

The ALJ determined plaintiff is not disabled at Step Four of the five-step sequential analysis. This Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform his past relevant work as a stocker/loader, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issues:

    A.    Whether the ALJ's finding at Step 4 that plaintiff can perform his past relevant work as a stocker/loader is supported by substantial evidence including:

        1.    Whether the VE testimony that plaintiff can perform his past relevant

---

[1] As indicated by plaintiff and by the record, the SSI documents are not a part of the record in this case. (Plaintiff's Brief at 2, Tr. 4).

>            work conflicts with the description of such job in the Dictionary of
>            Occupational Titles (DOT);
>
>     2.     Whether the ALJ was entitled to rely on the VE's testimony since it
>            conflicted with the DOT;
>
>     3.     Whether the record in the present case reflects any reason for deviating
>            from the DOT.
>
> B.   Whether the ALJ decision that plaintiff was capable of sustaining work from the
>      date of the accident, the onset date, through the date of the ALJ decision was
>      supported by substantial evidence including:
>
>     1.     12 months from onset or January 31, 1996 through January 30, 1997;
>
>     2.     After January 1997.

Plaintiff's Brief at 1.

### III.
### STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different

finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## IV.
## PLAINTIFF'S IMPAIRMENTS

Plaintiff was born July 22, 1975 and he was 23 years of age at the time of his hearing. (Tr. 120). Plaintiff has a ninth grade education and a G.E.D. (Tr. 35). Plaintiff was in a motor vehicle accident on January 31, 1996[2] which resulted in serious injury to his left hand and a closed head injury. (Tr. 35, 120). Plaintiff has not alleged he is unable to work due to his physical injuries, in fact at the hearing counsel for plaintiff said that within six to eight months post-accident, plaintiff was capable of performing sedentary work. (Tr. 35). The ALJ determined plaintiff,

> ...has some limitations of fine dexterity in claimant's left upper extremity (claimant is right hand dominant), impaired concentration precluding the performance of detailed or complex tasks, and severe social deficits precluding public contact and more than superficial co-worker interactions. Claimant has the residual functional capacity [RFC] to perform 1-2 step operations, understand, remember and carry out simple instructions with routine supervision, and to adapt

---

[2] In his opinion, the ALJ refers to the accident date and the onset date as January 30, 1996. (Tr. 23). Such date has appeared elsewhere in the record. (Tr. 328, 349, 363). Plaintiff has cited such date to be January 31, 1996. (Plaintiff's Brief at 3). The January 31, 1996 date appears to be supported by the hospital records. (Tr. 178-195).

to a routine work environment.

(Tr. 23, Finding #5). The ALJ determined plaintiff retained the RFC to perform his past relevant work as a stocker/loader, as such work is generally performed in the national economy. (Tr. 23-24; Findings # 6-8). Plaintiff argues he is not capable of maintaining substantial gainful activity in past relevant work and that the ALJ's decision that he could was not supported by substantial evidence. Plaintiff has requested reversal and remand.

V.
MERITS

As stated above, the issue presented to this Court involves a determination at Step Four of the five-step sequential analysis. Therefore, this Court shall review only the issue of whether there was substantial evidence to support the finding that plaintiff retained the ability to perform his past relevant work as a stocker and/or loader.

The ALJ was required at Step 4, to evaluate the claimant's residual functional capacity, in accordance with his subjective complaints of disabling pain, as well as the physical and mental demands of his past relevant work and to determine whether plaintiff's impairment prevented performance of his past relevant work. A claimant, capable of performing past relevant work despite a severe impairment, has no disability. 20 C.F.R. § 404.1520(e).

During the adminstrative hearing, the following exchange occurred between the ALJ and the VE:

Q: ....And did you have access to the neuro-psychological exhibits that - -
A: No, I didn't.

> Q: Well, that particular document is quite detailed but basically gives the diagnoses of amnesic disorder, cognitive disorder, impulse disorder, and depressive disorder with an access to a borderline intellectual functioning. I believe in the high seventies as I recall. 79 - - yea, around 79. With a GAF of 55 down from a previous 100, which I assume is pre-morbid. Specifically based on that report and those impairments and the testimony here today it appears theat there are a number of functional impairment of a mental nature. These involve cognitive effecting concentration and cognition; specifically we're precluding either detailed or complex work as a result of that impairment. Second, we apparently have some severe social deficits or behavioral deficits having to do with the impulse disorder. The effect of this is that it would preclude essentially public contact and it would severely limit the ability to relate to coworkers so that while he has the ability to work in the presence of coworkers we would want to limit employment that would require interacting with coworkers. More suitably a routine work environment where you're performing one or two step tasks in operations. He can understand, remember, and carry out simple instructions as has been amply demonstrated and he can relate to supervision without any difficulty. Okay. Given that - - and that's a rather complex set. If you need any of it repeated or you have questions I - - it's easier to give them to you one at a time.
>
> A: Um-hum.
>
> Q: Can you globally assess the limitations I've given you with regard to the past relevant work performed and indicate for me whether it would be precluded?

(Tr. 81-83). The VE testified that because of the coworker aspect, she would preclude plaintiff from being able to return to his past relevant work as a kitchen helper. (Tr. 83). The VE and ALJ then had an exchange as follows:

> Q: Okay.
>
> A: The stocking job or the loading and unloading I think comes closer to meeting that hypothetical in the sense that it - - there's no fine motor. It can be done at the medium, heavy, and sometimes light level. They usually are simple instructions. He would be supervised. Again, there would be coworkers around but there wouldn't be as much need for him to be interacting and he would have his responsibilities and have to deal with them. There's a possibility that based on the level of, you know - - well,

        that that would have a - - the least amount of coworker interaction.

Q:      Okay.

A:      That would be the pipe loading and the stocking or the warehouse work. And it's difficult - - because different employers may or may not have more or less interaction with coworkers it's hard to say that overall, blanketly those jobs would either be real good or real bad. It's really quite often a function of the workplace - - individual place.

Q:      Okay. All right. Then let's just assume for the sake of argument - -

A:      Okay.

Q:      - - that past relevant work is precluded by the limitations.

(Tr. 83). The VE went on to testify plaintiff would be capable of performing other work which existed in significant numbers including jobs in the sedentary and light unskilled areas examples of which included tile spotter, jewelry preparer, and eyeglass frame polisher. (Tr. 85-86). The VE also testified such a person would be capable of some medium level jobs although no specific jobs were discussed. (Tr. 86).

        In his opinion, the ALJ stated,

        In his former job as a stocker and loader, *as generally performed in the national economy*, the claimant performed simple repetitive tasks with minimal requirement to interact with the public or coworkers on a regular basis. The impartial vocational expert testified that a person of claimant's particular residual functional capacity, as found above, could perform these types of work that claimant performed in the past, but not other past relevant positions of kitchen helper or waiter.

(Tr. 22)(emphasis added). The ALJ then held at Finding #6, "In his past work as stocker and loader, *as generally performed in the national economy*, the claimant performed simple repetitive tasks with minimal requirement to interact with the public or coworkers on a regular basis." (Tr. 23). Herein lies the error in this case. While the ALJ said the VE testified about the

jobs of stocker and loader *as generally performed in the national economy*, a review of the exchange set forth above shows this statement to be inaccurate. The testimony of the VE related to these jobs was ambiguous at best. She was not able to say whether such jobs would fall within the parameters of the RFC, saying instead, "And it's difficult - - because different employers may or may not have more or less interaction with coworkers it's hard to say that overall, blanketly those jobs would either be real good or real bad. It's really quite often a function of the workplace - - individual place." (Tr. 83). Additionally, while the ALJ has said he refers to such jobs <u>as generally performed in the national economy</u>, in his Finding #6, it is unclear whether his determination of not disabled is based upon an analysis of plaintiff's past relevant work as plaintiff performed it or is based upon an analysis of such past relevant work as it is generally performed. The ALJ refers to the general but discusses the specific tasks performed by plaintiff in his past work. A review of the Vocational Report completed pre-hearing by plaintiff, does not indicate, as to these two (2) jobs, whether plaintiff performed simple repetitive tasks with a minimal requirement to interact with the public or coworkers on a regular basis. (Tr. 23, 153-154). Nor was plaintiff questioned about the jobs as he previously performed them. It is unclear from the record before this Court, what source the ALJ used to determine the RFC requirements of these two (2) jobs, either as generally performed in the national economy or as specifically performed by plaintiff. The ALJ erred by not setting forth such source, especially in light of his more specific hypothetical to the VE wherein he asked her to assume plaintiff's past relevant work was precluded by the limitations. (Tr. 83).

More specifically, the ALJ erred at Step 4 of the sequential analysis, finding plaintiff could return to his past relevant work, because the ALJ failed to analyze plaintiff's medical

history in accordance with Social Security Ruling (SSR) 82-62. Such ruling requires an ALJ in the context of analyzing plaintiff's ability to perform past relevant work, to consider and carefully appraise, "(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy." SSR 82-62. The third prong of the SSR 82-62 test requires, "in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* (DOT)*,* etc., on the requirements of the work as generally performed in the economy." In this case, the testimony from the vocational expert does not provide a basis for the demands of plaintiff's past relevant work as generally performed and the ALJ interprets the vocational expert's testimony incorrectly by finding it to support a finding that plaintiff could return to his past relevant work. He then does not cite any other source which supports his opinion, such as the DOT. As such, it cannot be said the opinion of the ALJ that plaintiff could perform his past relevant work as either a stocker or loader was supported by substantial evidence. On remand, the ALJ should make explicit findings regarding plaintiff's past relevant work either as he actually performed it or as it is generally performed, and cite the appropriate source to support such finding.

Plaintiff has also argued the ALJ decision was flawed because it was not based upon substantial evidence that plaintiff was capable of sustaining work during the periods at issue.

(Plaintiff's Brief at 1).  It is uncontroverted that from January 31, 1996[3] until August 19, 1998 (the date of the administrative hearing) plaintiff was unemployed except for brief times, all of which ended with plaintiff being terminated from work.  In January 1997, plaintiff began a job as a security guard and was terminated the same month.  (Tr. 53, 55).  On January 26, 1997, plaintiff began work at Wal-Mart as a cashier.  (Tr. 55, Plaintiff's Brief at 22).  That employment was terminated after approximately three (3) months.  (Tr. 41, 56).  Plaintiff then began work at another Wal-Mart in a different town but was terminated approximately one month later.  (Tr. 44).  Plaintiff's last unsuccessful employment as a hotel concierge lasted approximately three (3) months.  (Tr. 47, 49).  At the time of the administrative hearing on August 19, 1998, plaintiff had been working at another hotel as a bellman for about a week.  (Tr. 49-50).

The ALJ found plaintiff had not engaged in substantial gainful activity since January 30, 1996.  (Tr. 23, Finding #2).[4]  In his evaluation of the evidence, the ALJ addressed plaintiff's jobs as a cashier and bellhop finding, "This work activity constitutes an unsuccessful work attempt as it ended after a brief period *due to apparent medical reasons*, and it is not otherwise considered substantial gainful activity under the Act."  (Tr. 18)(emphasis added).   Although not entirely clear, the "apparent medical reasons" referred to by the ALJ as to why such employment terminated includes plaintiff's, "making inappropriate sexually suggestive remarks to female co-workers and for falling asleep on the job."  (Tr. 19).   This latter reference to falling asleep on the job appears to refer to plaintiff's January 1997 security guard position which was terminated because of sleeping.  (Tr. 53-54).

---

[3] *See* Footnote 2.

[4] It appears this date should be January 31, 1996.  *See* Footnote 2.

Plaintiff completed the Health South brain injury program between February and April of 1998. (Tr. 45). During such program, plaintiff worked with a vocational counselor, Christopher Mitchell. (Tr. 72). All of the unsuccessful work attempts outlined above, with perhaps the exception of the security guard job, were at jobs not recommended by plaintiff's vocational counselor, Mr. Mitchell. (Tr. 45, 50, 74). The issue whether plaintiff could maintain substantial gainful employment was not addressed at the administrative level. In light of plaintiff's work history, this issue should be addressed on remand.

Finally, the undersigned has recommended reversal and remand based upon the analysis at Step 4 of the sequential evaluation process for the reasons recited above. If on remand the ALJ determines plaintiff is unable to perform his past relevant work, the analysis will proceed to Step 5. Defendant has not argued plaintiff was able, during the period at issue, to perform other jobs which exist in significant numbers in the national economy, even though there was testimony from the VE to this effect. (Tr. 84-86). Since the ALJ did not alternatively find at Step 5, plaintiff capable of performing jobs which exist in significant number in the national economy, it does not appear the Court can address the issue and defendant has cited no authority to suggest otherwise.

Further, even if the ALJ had determined, at Step 5, that other jobs existed in the national economy which plaintiff could perform, it is unclear whether the record, as developed so far, would, without more, support such a finding. While it is true the VE testified that other jobs existed in significant numbers in the economy that could be performed by a person with plaintiff's RFC, such finding was premised upon a hypothetical which did not incorporate the necessity for a period of "supported employment," and there was no determination that a period

of "supported employment" was not necessary. Supported employment, as testified by plaintiff's state vocational counselor is,

> It means that we would be there with him from point A to point Z. We would go into the interview situation with him, explain to the employer any types of limitations that he may have on the job if he's agreeable to that. We can't give any information out without his consent of course. We like to be there for any type of orientation or training that the company provides so that we will know what to expect or what the employer expects. And then we gradually reduce the time that we spend at the work site in order to help him become more independent. And we are responsible for monitoring. Excuse me. Monitoring his work performance for the lifetime of the job.

(Tr. 76). This testimony appears to indicate that plaintiff would be shadowed at any job he attempts, at least for a while, until the vocational counselor is satisfied plaintiff is capable of working without this support. It further appears plaintiff will be "monitored" for the life of the job. Certainly, these factors should be considered by a VE to ascertain whether jobs exist in the national economy not only for a person with plaintiff's RFC, but also for a person who will be shadowed and monitored in such a way.[5]

It is the recommendation of the Magistrate Judge to the United States District Judge that the administrative decision finding plaintiff WILSON not disabled be REVERSED, and that this case be REMANDED for further consideration as set forth in this report and recommendation.

## VI.
## RECOMMENDATION

It is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be REVERSED and REMANDED for further administrative proceedings as set forth herein.

---

[5] If it were shown such "supported employment" was not necessary, then a different result would occur.

VII.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 3rd day of March 2006.

*/s/ Clinton E. Averitte*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation

contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

SS\R&R\WILSON.REMAND:3               14